UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) |  |
|---|---|---|
| v. | ) ) ) | No. 2:10-CR-00118-3-JRG-CRW |
| WILLIE S. CARTER | ) ) ) |  |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's motion for compassionate release and appointment of counsel [Docs. 559, 568]. The United States filed a motion in opposition [Doc. 565]. For the reasons that follow, the motion will be denied.

**I.    BACKGROUND**

On August 31, 2012, Defendant was sentenced to 216 months of imprisonment based on his conviction for conspiracy to distribute and possession with intent to distribute 28 grams or more of cocaine base in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B) [Doc. 319]. The Defendant is presently housed at Ashland Federal Correctional Institution, and the Bureau of Prisons ("BOP") projects that his release date will be March 27, 2026. *See* Inmate Locator, Bureau of Prisons, https//www.bop.gov.inmateloc/ (last visited Feb. 10, 2022). He moves for compassionate release based on COVID-19, his health conditions, and his rehabilitative efforts [Doc. 559, Doc. 568, at 2–3].

## II. COMPASSIONATE RELEASE

### A. Legal Standard

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Section 3582(c)(1)(A)(i) of Title 18, United States Code authorizes district courts to consider defendant motions for sentence reduction based on "extraordinary and compelling reasons."

Before seeking compassionate release from the court, a defendant must first "exhaust the BOP's administrative process" or wait "thirty days after the warden has received the compassionate release request—whichever is earlier." *United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). Exhaustion of administrative remedies is a "mandatory condition" for defendant-filed motions for compassionate release. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). However, because the administrative exhaustion requirement operates as a "claim processing rule," it may be waived or forfeited by the Government. *Id*. at 833–34.

If the exhaustion requirement has been met, a court may grant a motion for compassionate release if (1) "extraordinary and compelling reasons merit a sentence reduction," (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the court has "considered the factors . . . in 18 U.S.C. § 3553(a), to the extent that they apply." § 3582(c)(1)(A). However, when the defendant, rather than the BOP, files a motion for compassionate release, the court "may skip step two of the [Section] 3583(c)(1)(A) inquiry" and has "full discretion to define 'extraordinary and compelling circumstances' without consulting the policy statement in [U.S.S.G.] § 1B1.13.'" *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir.

2020). A motion for compassionate release may be denied when one of the substantive requirements is not met. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

**B.     Analysis**

On September 22, 2020, Defendant requested compassionate release from BOP due to the COVID-19 pandemic, and his request was denied on November 5, 2020 [*See* Doc. 565-1]. On August 9, 2021, Defendant requested compassionate release from BOP a second time, asserting that his medical conditions make him particularly vulnerable to the coronavirus [Doc. 568, at 5]. More than 30 days have passed since Defendant made his second request. Thus, the Court finds that it has authority under § 3582(c)(1)(A) to address the merits of Defendant's motion.

**1.     Extraordinary and Compelling Reasons**

As mentioned above, Defendant seeks compassionate release based upon the COVID-19 pandemic and his medical conditions [Docs. 568, 559]. He contends that his increased risk of serious illness from COVID-19, when considered alongside his rehabilitative efforts constitute extraordinary and compelling reasons for a sentence reduction [Doc. 559].

The BOP reports that Defendant's correctional facility currently has 32 confirmed cases of COVID-19 among the inmate population and eight confirmed cases among staff. *COVID-19: Coronavirus*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 10, 2022). These numbers are not insignificant. However, they are not extraordinary, especially in light of the prevalence of COVID-19 outside the prison setting. As courts have recognized, the pandemic alone cannot justify compassionate release. *See, e.g.*, *United States v. Shah*, No. 16-20457, 2020 U.S. Dist. LEXIS 73313, at *4–5, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications,

does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Additionally, at Defendant's prison, 197 staff and 1083 inmates have been fully vaccinated. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 10, 2022). Defendant himself has received at least one dose of the vaccine [Doc. 565-2]. The medical record before the Court, which was generated in April 2021, does not show that Defendant has received his second dose, but there is also no indication that the second dose is not available to him. A defendant's "access to the COVID-19 vaccine substantially undermines his request for a sentence reduction" because "with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). "[T]o the extent prisons do offer some unique challenges" such as social distancing, "the vaccine now significantly reduces the risks associated with COVID-19." *Id*. To the extent that Defendant's health conditions may place him at risk of severe complications from COVID-19, that risk is reduced by the availability of the vaccine.

Medical records show that Defendant is forty years old and has been diagnosed with asthma, obesity, sickle cell trait, and a heightened risk of contracting diabetes [Doc. 568, at 2, 7–9]. The Centers for Disease Control ("CDC") recognizes that asthma, obesity, diabetes, and sickle cell disease "can" increase the risk of severe illness from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 10, 2022). The CDC does not list an individual's

pre-diabetic condition or sickle cell trait [1] as special risk factors. *See id*. Of the medical conditions cited by Defendant, the Court recognizes that his asthma and obesity could place him at an increased risk of severe complications from COVID-19. However, these conditions are not uncommon and are generally treatable. The BOP categorizes Defendant as Care Level 1 [Doc. 565-4]. Care Level 1 inmates are "generally healthy" and "may have limited medical needs that can be easily managed by clinician evaluations every 6 to 12 months." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Feb. 10, 2022). Also, Defendant previously contracted COVID-19 and recovered [Doc. 559]. In light of the nature of Defendant's ailments, the availability of the vaccine, his prior recovery from COVID-19, and Care Level 1 status, the Court finds that Defendant's health concerns do not meet the "extraordinary and compelling" standard.

Lastly, the Court notes Defendant's rehabilitative efforts. While the Court considers disciplinary records and rehabilitative efforts to be relevant to a discussion of the § 3553(a) factors, the Court does not find those facts sufficient to constitute "extraordinary and compelling" grounds for compassionate release. Congress has provided that, in the context of 18 U.S.C. § 3582(c)(1)(A), "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for release. 28 U.S.C. § 994(t).

Thus, the Court finds that Defendant's COVID-related health concerns and rehabilitative efforts do not rise to the level of extraordinary and compelling grounds for compassionate release.

---

[1] The available record only documents that defendant has sickle cell *trait* rather than sickle cell *disease* [*See* Doc. 568, at 8]. Persons with only the sickle cell trait "usually do not have any of the signs of the disease and live a normal life, but they can pass the trait on to their children. Additionally, there are a few, uncommon health problems that may potentially be related to sickle cell trait." See What is Sickle Cell Disease?, https://www.cdc.gov/ncbddd/ sicklecell/facts.html (last visited February 15, 2022).

## 2. 18 U.S.C. § 3553(a) Factors

Even if the Court found that Defendant has shown extraordinary and compelling reasons for compassionate release, the 18 U.S.C. § 3553(a) factors do not support a sentence reduction. Under 18 U.S.C. § 3553(a), the Court considers the following factors in determining the sentence to be imposed:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
. . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; . . .

When reviewing the § 3553(a) factors, this Court may consider the amount of time that a defendant has served on a sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). In this case, Defendant was sentenced to a below-guidelines sentence of 216 months,[2] and his projected release date is March 27, 2026, approximately 49 months from now. The Court finds that the significant period of time

---

[2] Defendant's guideline range was 262 to 327 months [Presentence Report, ¶ 53].

Defendant has left to serve on his sentence weighs against compassionate release, especially since Defendant was sentenced to a term of imprisonment below the applicable guidelines.

The Court also considers the nature of the offense. As detailed in his plea agreement, Defendant participated in a conspiracy to distribute crack cocaine, and as part of that conspiracy, procured cocaine from Rome, Georgia, cooked the cocaine to produce "crack," and distributed the crack cocaine to customers in Johnson City, Tennessee [Doc. 205, ¶ 4]. The Court finds that Defendant's offense was serious, especially because it was his third conviction for drug distribution within a period of approximately ten years [*See id.* at ¶¶ 31–32].

The Court recognizes Defendant's rehabilitative efforts and commends him for his disciplinary record. The Court also acknowledges that Defendant does not have a violent criminal history [*See* Presentence Report, at ¶¶ 29–33]. However, these positive facts are still outweighed by the other relevant sentencing factors.

After considering the applicable § 3353(a) factors and all evidence of record, the Court finds that the § 3353(a) factors weigh against granting compassionate release at this time. A sentence reduction in this case would not reflect the seriousness of the offense of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant. Accordingly, Defendant's motion for compassionate release will be denied.

### III. MOTION FOR COUNSEL

Defendant's motion to appoint counsel [Docs. 559, 568] will be denied as moot. Pursuant to this Court's Standing Order 21-09, the Federal Defender Service of Eastern Tennessee ("FDEST") has already been appointed to represent Defendant. FDSET has filed notice that, after a review of Defendant's case, it does not intend to submit any supplemental motions [Doc. 563].

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for compassionate release [Docs. 559, 568] is **DENIED**.

So ordered.

ENTER:

                                                     s/J. RONNIE GREER
                                         UNITED STATES DISTRICT JUDGE